UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE TIMES OF TRENTON PUBLISHING CORPORATION, | : | Civil Action No. 03-6026 (AET) |
| Plaintiff, | : | |
| v. | : | M E M O R A N D U M |
| | : | O P I N I O N |
| PUBLIC UTILITY SERVICE CORPORATION, et al., | : | |
| Defendants. | : | |

**HUGHES, U.S.M.J.**

This matter comes before the Court upon Application[1] by Defendant, Public Utility Service Corporation ("Defendant"), to compel Plaintiff, the Times of Trenton ("Plaintiff") and Third Party Defendant Advance Publications, Inc. ("Third Party Defendant") to produce documents ("status reports") withheld under both the attorney-client privilege and work-product doctrines. Plaintiff submitted opposition to the Application. The Court has reviewed the papers submitted by the parties and heard oral argument on April 11, 2005. The Court also permitted supplemental memoranda. For the reasons stated below, Defendant's Motion to compel production of information is granted in part and denied in part.

**I.   BACKGROUND AND PROCEDURAL HISTORY**

This matter arises out of a utility consulting contract between Plaintiff and Defendant. On December 18, 2003, Plaintiff filed a Complaint seeking a declaratory judgment against

---

[1]The application was originally filed as a formal Motion to Compel Documents (*see* Docket entry #22) but was subsequently terminated by the Clerk due to incomplete filing (*see* Docket entry dated February 14, 2005).

Defendant. The Complaint alleges a dispute regarding amounts owed to Defendant pursuant to a utility consulting contract between the parties and seeks a declaration of the parties' respective rights pursuant to the contract. *See* Compl. On January 20, 2004, Defendant filed a motion to dismiss the Complaint, stay proceedings and/or transfer the case to the Eastern District of Pennsylvania. That motion was denied on February 17, 2004, and on February 10, 2005, Defendant submitted the instant Application, seeking to compel status reports withheld by Plaintiff on the basis of attorney-client privilege and work-product immunity. These status reports were prepared by API Systems Group, Inc., a subsidiary corporation of API, the owner of the Trenton Times and a number of other newspapers. In essence here, the reports were provided to Mark Newhouse, President of API Systems Group, to keep him advised of the internal activities of the Systems Group. According to the Director of the Systems Group during the relevant period of time, "...the Systems Group's status reports were not intended for distribution to the API companies..." Herring Cert. ¶ 5. Mr. Newhouse testified that upon receiving the status reports, he shared them with six individuals, each of whom was a member of the Newhouse family, and who collectively formed the upper management of API's newspaper business. It is this "sharing of reports" that represents the heart of the present controversy.

    A.    **Defendant Public Utility Service Corporation's Application to Compel all Status Reports**

Defendant asserts that Plaintiff and third-party Defendant have waived the assertion of attorney-client privilege and work-product immunity. Defendant argues that "confidentiality of communications covered by a privilege must be jealously guarded by the holder of the privilege lest it be waived." Def.['s] Br. at 4 (citing *In re Sealed Case*, 877 F.2d 976, 980 (D.C. Cir.

1989).  Defendant claims that Plaintiff did not "jealously guard" the information contained in the status reports because it was freely disseminated to all of API's newspapers and publishers, and therefore the privilege is waived.  *Id.* at 5.  Defendant further contends that the status reports should not receive work-product protection because they were not prepared by an attorney or an agent of an attorney, nor do they include any information provided by counsel.  *Id.* at 13.  Additionally, Defendant argues that the purpose of the status reports was to notify superiors of the activities performed over the course of any given week.  *Id*.  Consequently, Defendant argues that the status reports were not prepared or collected by an attorney in anticipation of possible litigation, but instead were prepared in the ordinary course of business.  *Id*.

      **B.**      **Plaintiff's Opposition to Defendant's Application**

In opposition, Plaintiff contests Defendant's right to the status reports, maintaining that the documents were prepared in anticipation of the litigation.  Specifically, Plaintiff argues that the documents make direct reference to strategic discussions with its attorney Mr. DiMino.  These references include thoughts about the legal ramifications of the cancellation of the agreement between the parties and attempted settlement amounts purportedly due to Defendant under the agreement.  Pl. ['s] Br. at 1.  Additionally, Plaintiff contends that the entries of Mr. Petruzzelli, the reports' generator, reflect Mr. DiMino's thoughts and strategies on how to handle pre-litigation settlement negotiations and that these entries fall squarely within the work-product doctrine.  *Id*. at 4.

In response to Defendant's claims of waiver, Plaintiff contends that the status reports were only sent to Mr. Petruzzelli's boss, Joan Herring, who certified under oath that they were not disseminated to API subsidiaries.  Moreover, Mr. Newhouse stated in his deposition that he only

disseminated the documents to six upper-level API officers. Plaintiff argues that even if the status reports were disseminated, there would be no waiver of work-product immunity because it was not disseminated to an adversary, which is the only way to effect waiver of work-product immunity. Pl.['s] Br. at 9.

## II.     DISCUSSION AND ANALYSIS

### A.     Scope of Discovery

Initially, the Court notes that jurisdiction is based on diversity of citizenship. Federal Rule of Evidence 501 and District of New Jersey precedent require application of New Jersey state rules of evidence for diversity actions in New Jersey federal courts. Rule 501 reads in relevant part:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

FED. R. EVID. 501.

Interpreting the privileges embodied in Rule 501, the United States District Court of New Jersey has said, "[I]n cases where a district court is exercising diversity jurisdiction, the law of privilege which controls is that which would be applied by the courts of the state in which it sits." *Maertin v. Armstrong World Industries, Inc.*, 172 F.R.D. 143, 147 (D.N.J. 1997) (citing

*Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978); *In re Ford Motor Co.*, 110 F.3d 954, 964-65 (3d Cir. 1997)); *Robertson v. Central Jersey Bank & Trust Co.*, 834 F. Supp. 705, 707 (D.N.J. 1993) ("When jurisdiction is based on diversity, *Rule 501 of the Federal Rules of Evidence* requires this Court to examine state law in deciding questions of privilege." (referring to *United Coal Co. v. Powell Constr. Co.*, 839 F.2d 958, 965 (3d Cir. 1988))).

While analysis of the issue as it applies to the attorney-client privilege is governed by the substantive law of New Jersey, the Court's analysis with respect to the work-product doctrine is governed by federal law. *See United Coal Companies v. Powell Construction Company*, 839 F.2d 958, 966 (3d. Cir. 1988) ("Unlike the attorney/client privilege, the work-product privilege is governed, even in diversity cases, by a uniform federal standard embodied in FED. R. CIV. P. 26(b)(3).").

    **B.**    **Attorney-Client Privilege**

In New Jersey, the attorney-client privilege is governed by §2A:84A-20, which provides as follows:

> (1) General rule. Subject to Rule 37 and except as otherwise provided by paragraph 2 of this rule communications between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such communication, and (b) prevent his lawyer from disclosing it, and (c) to prevent any other witness from disclosing such communication if it came to the knowledge of such witness (I) in the course of its transmittal between the client and the lawyer, or (ii) in a manner not reasonably to be anticipated, or (iii) as a result of a breach of the lawyer-client relationship, or (iv) in the course of a recognized confidential or privileged communication between the client and such witness . . .

N.J.R.E. 504.

But despite this privilege, it can be waived. The waiver of privilege is governed by N.J.S.A. 2A:84A-29, which provides as follows:

> A person waives his right or privilege to refuse to disclose or to prevent another from disclosing a specified matter if he or any other person while the holder thereof has (a) contracted anyone not to claim the right or privilege or, (b) without coercion and with knowledge of his right or privilege, made disclosure of any part of the privileged matter or consented to such a disclosure made by anyone.

N.J.R.E. 530.

At issue here is the disclosure of the status reports, first to Mr. Newhouse and then to six Newhouse family members who, according to Plaintiff, "collectively constitute the upper management of API's newspaper business." Pl.['s] Ltr. Br. at 7. The Court notes that in New Jersey, it is well settled that communications to corporate management are protected. *See, e.g., Sicpa North America, Inc. v. Donaldson Enterprises, Inc.,* 179 N.J. Super. 56, 60 (Law Div. 1987) (attorney-client privilege extends to corporations and to communications made by agents of corporation, and privileged information is not waived when disclosed in a report to corporation's management or employees.).

While Defendant argues that Plaintiff failed to take reasonable steps to protect disclosure of this information, the Court finds the opposite is true. These status reports were not distributed to *all* of API's subsidiary newspapers, but rather only to six Newhouse family members comprising the upper management of API's newspaper business and the parent of the various subsidiaries. The Court finds that the reports were provided to the managing body to advise these members of Systems Group's various activities, not to apprise individual API subsidiaries. The Court therefore finds that this limited distribution does not rise to the level of waiver of the

attorney-client privilege.

### C. Work-Product Doctrine

The work-product doctrine, first recognized by the Supreme Court in *Hickman v. Taylor*, 329 U.S.495, 67 S.Ct. 385 (1947), "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp.*, 343 F.3d 658, 661-662 (D.N.J. 2003) (quoting *United States v. Nobles*, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170 (1975) and *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)). "The privilege thus promotes the adversarial system by protecting the confidential nature of materials prepared by attorneys in anticipation of litigation and '[e]nables attorneys to prepare cases without fear that their work-product will be used against their clients.'" *In re Grand Jury (Impounded)*, 138 F.3d 978, 981 (3d Cir. 1998) (quoting *Westinghouse Elec. Corp. v. Republic of the Phillippines*, 951 F.2d 1414, 1428 (3d Cir. 1991)). "This protection also can extend to materials prepared by an attorney's agent, if that agent acts at the attorney's direction in creating such documents." *Id.* (citing *Nobles*, 422 U.S. at 238-39, 95 S.Ct. at 2170).

Federal Rule of Civil Procedure 26(b)(3), codifying the work-product doctrine, provides, in relevant part:

> [A] party may obtain discovery of documents and tangible things otherwise discoverable . . . and prepared in anticipation of litigation or for the trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party

>             concerning the litigation.

FED. R. CIV. P. 26(b)(3).

Therefore, work-product exists when the party opposing discovery establishes three items: 1) that the material sought for discovery consists of documents or other tangible items; 2) that the material was prepared in anticipation of litigation; and 3) that the material was created by or for a party or that party's representative.  *Schneck v. International Business Machines Corp.*, No. 92-4370, 1993 U.S. Dist. WL 765638 at *4 (D.N.J., Jul. 27, 1993) (citing *Ennis v. Anderson Trucking Service Inc.*, 141 F.R.D. 258, 259 (E.D.N.C.1992)).

Stated differently, Rule 26(b)(3) establishes two tiers of protection: first, work prepared in anticipation of litigation by an attorney or his agent is discoverable only upon a showing of need and hardship; second, 'core' or 'opinion' work-product that encompasses the 'mental impressions, conclusions, opinion, or legal theories of an attorney or other representative of a party concerning the litigation' is 'generally afforded near absolute protection from discovery.'  *In re Cendant Corp.*, 343 F.3d at 663 (citing FED. R. CIV. P. 26(b)(3); *In re Ford Motor Co.*, 110 F.3d 954, 962 n.7 (3d Cir. 1997)).  "Thus, core or opinion work-product receives greater protection than ordinary work-product and is discoverable only upon a showing of rare and exceptional circumstances." *Id.*; *see also Loenen v. Johns-Mansville*, 135 F.R.D. 94, 96 (D.N.J. 1990) (an attorney's work-product is protected by a qualified privilege, but such information, in certain circumstances, may be discoverable).

The predicate of the waiver inquiry in the work-product context is not, as it is in the attorney-client context, whether the material was disclosed, but whether the material was disclosed to an adversary.  *See Maldonado v. New Jersey, et al.* 225 F.R.D. 120, 131(D.N.J.

2004). Furthermore, in *United States v. American Tel. & Tel. Co.,* 642 F.2d 1285, 1299 (D.C. Cir. 1980) it was concluded:

> The work-product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. The purpose of the work-product doctrine is to protect information against opposing parties, rather than against all others outside a particular confidential relationship, in order to encourage effective trial preparation.... We conclude, then that while the mere showing of voluntary disclosure to a third person will generally suffice to show waiver of the attorney-client privilege, it should not suffice in itself for waiver of the work-product privilege.

*Id.*

Defendant proffers the theory that Plaintiff waived its work-product immunity through dissemination of the status reports by Mr. Newhouse to six Newhouse family members who work for API subsidiaries. The Court notes that the Third Circuit has held that waiver as it applies to the work-product doctrine is difficult to establish. In *Westinghouse*, the Court held:

> Because the work-product doctrine serves ... to protect an attorney's work-product from falling into the hands of an adversary, a disclosure to a third party does not necessarily waive the protection of the work-product doctrine. Most courts hold that to waive the protection of the work-product doctrine, the disclosure must enable an adversary to gain access to the information. See, for example, *AT&T*, 642 F.2d at 1299. See also 8 *Wright & Miller*, Section 2024 at 210 (citing cases). We agree that the purpose of the work-product doctrine requires us to distinguish between disclosures to adversaries and disclosures to non-adversaries.

*Westinghouse*, 951 F.2d at 1428.

The "essential question with respect to waiver of the work-product privilege by disclosure is whether the material has been kept away from adversaries." *Nicholas v. Wyndham Int'l, Inc.*

9

2003 WL 23198845 at * 3-4 (D.V.I. 2003).  It is clear that here, although the status reports were disseminated to API's managing directors through Mr. Newhouse, the reports were delivered to these six people to keep them abreast of activities of one of its subsidiaries, the Trenton Times, to keep them informed of activities at the Times, much of which involved discussions related to litigation.  Moreover, the reports were distributed with the intent and understanding that they would remain confidential and not be widely disseminated.  Although the delivery of these reports to six members of the API family constitutes a dissemination, it hardly approaches the level of dissemination needed to breach work-product immunity.  The material was at all times in the hands of trusted associates, "kept away from adversaries."  *Nicholas* at *3-4.

### D.   Proper Assertion of Privilege

The inquiry however, does not end here, after resolution of the waiver argument.  The Court must determine, document by document, whether the assertion of privilege is justified.  The Court conducted an *in camera* review of each document.  As for the documents in question and whether they constitute privileged attorney-client material and/or work-product the Court makes the following individual findings:

- Bates numbers 6003 and 6005 are protected by the attorney-client privilege and the work-product doctrine because they relate to legal advice given and work performed by the attorney on behalf of the client in anticipation of litigation.

- Bates number 6010 is protected by the attorney-client privilege and the work-product doctrine because it relates to legal strategy regarding a settlement offer.

- Bates numbers 6019, 6302 and 6052 are protected by the attorney-client privilege because they relate to legal advice sought by the client from counsel in anticipation of litigation.

- Bates numbers 6136, 6140, 6142, 6145, 6149, 6153, 6157, 6159, 6163, 6166, 6170, 6173, 6176, 6179, 6182, 6185, 6189, 6191 and 6282 are protected by the attorney-client privilege

and the work-product doctrine because they all relate to the proposed conveyance of a settlement offer.

- Bates number 6218 is protected by the attorney-client privilege and the work-product doctrine because it relates to the proposed conveyance of a settlement offer and relates to communications between an attorney and client.

- Bates numbers 6237 and 6244 are protected by the attorney-client privilege and the work-product doctrine because they relate to the proposed conveyance of a settlement offer.

- Bates number 6302 and 6304 are protected by the attorney-client privilege and the work-product doctrine because they relate to the proposed conveyance of a settlement offer and to communications between an attorney and a client.

- Bates number 6350 is protected by the attorney-client privilege and the work-product doctrine because it relates to legal advice provided by the attorney to the client in anticipation of litigation.

- Bates number 6130 is protected by the attorney-client privilege and the work-product doctrine because it relates to the proposed conveyance of a settlement offer.

- Bates number 6048 is protected by the attorney-client privilege and the work-product doctrine because it relates to communications between an attorney and a client in anticipation of litigation.

- Bates numbers 6056, 6060, 6064, 6068, 6072, and 6076 are protected by the attorney-client privilege and the work-product doctrine because they relate to communications between an attorney and a client in anticipation of litigation.

- Bates number 6080 is protected by the attorney-client privilege and the work-product doctrine because it relates to the proposed conveyance of a settlement offer.

- Bates number 6084 is protected by the attorney-client privilege and the work-product doctrine because it relates to legal advice and the proposed conveyance of a settlement offer.

- Bates number 6092 is protected by the attorney-client privilege and the work-product doctrine because it relates to legal advice provided by the attorney to the client in anticipation of litigation.

- Bates numbers 6117, 6121, 6124, 6127, and 6134 are protected by the attorney-client privilege and the work-product doctrine because they relate to the proposed conveyance of a settlement offer.

- **Bates numbers 6012, 6014, 6016, 6018, 6023, 6027, 6030, 6033, 6037, 6041, 6045, 6088, 6261, 6096, 6100, 6105, 6109, 6113, are not protected by the attorney-client privilege or the work-product doctrine as they relate to purely business discussions without reference, direct or indirect, to any legal advice or discussion in anticipation of litigation.**

### III.  CONCLUSION

For the reasons stated herein, the Court will deny Defendant's Application to Compel as it relates to waiver as to either attorney-client or work-product privilege.  The Court finds that the limited distribution of the status reports to six Newhouse family members who collectively comprise the upper management of API's newspaper business, does not rise to the level of waiver of the attorney-client privilege.  Additionally, the Court finds that the limited dissemination of the report to six Newhouse family members who collectively comprise the upper management of API's newspaper business, does not meet the threshold necessary to establish waiver of the work-product immunity.  However, the Court has reviewed the documents *in camera* to determine whether the pertinent privilege asserted is justified.  An appropriate Order accompanies this Memorandum Opinion.

Dated: May 3, 2005.